MICHAEL J. GARCIA
United States Attorney
Southern District of New York
Attorney for Defendants
By: LAWRENCE H. FOGELMAN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2719
Email: Lawrence.Fogelman@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FRIENDS OF HAMILTON GRANGE and :
DR. JOHN CARDWELL, :
 :
                Plaintiffs, :        08 Civ. 5220 (DLC) (FM)
      v. :
 :
DIRK KEMPTHORNE, Secretary of the Interior; :
U.S. DEPARTMENT OF THE INTERIOR; :
MARY A. BOMAR, Director of the National :
Park Service; NATIONAL PARK SERVICE; and :
MARIA BURKS, Commissioner of National Parks :
of New York Harbor and Superintendent of :
Manhattan Sites, :
 :
                Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DECLARATION OF DAVID USCHOLD

David Uschold, pursuant to the provisions of 28 U.S.C. § 1746, declares as follows:

1.    I am the Compliance Manager for the Construction Program for the Northeast

Region of the National Parks Service ("NPS"). I have held this position since August 2003. In

this capacity, I manage advance planning and compliance for all construction projects within the

Northeast Region, and oversee the staff that guides NPS park personnel through their compliance

1

activities. I also hold the position of Northeast Region Section 106 coordinator for NPS. I have held this position since January 2007. In this capacity, I coordinate the regional Section 106 program developing regional policy and providing guidance to parks and other regional staff regarding Section 106 of the National Historic Preservation Act ("NHPA").

2.    I was the compliance coordinator for the project to relocate the Hamilton Grange National Memorial (the "Grange") from Convent Avenue to St. Nicholas Park. In that respect, I coordinated and ensured satisfactory completion of all environmental compliance including NHPA.

## I.    NPS INVITED ACHP TO PARTICIPATE IN THE GRANGE PROJECT

3.    On May 25, 1993, a draft of the General Management Plan/Environmental Impact Statement for the Grange project was distributed to Advisor Counsel on Historic Preservation ("ACHP"). ACHP declined to comment.

4.    NPS invited ACHP to participate as a signatory to the Programmatic Agreement for the Grange project, attached hereto as Exhibit 1. ACHP declined to be a signatory party, but at ACHP's request, NPS provided ACHP with an executed copy of the Programmatic Agreement. See Exhibit 2.

5.    On December 12, 2006, NPS provided ACHP with a set of design development drawings illustrating the most current plan for relocating and rehabilitating the Grange. See Exhibit 3.

6.    On May 21, 2007, NPS provided ACHP with a set of the construction documents. See Exhibit 4.

7.    On or around May 28, 2008, ACHP reviewed NPS' compliance with Section 106

of the NHPA in response to requests from community groups including Community Board 9 and

Hamilton Heights Homeowners Association. See Exhibit 5. In response, ACHP decided not to

ask NPS to revisit the Programmatic Agreement for the Grange project. See Exhibit 6.

## II. NPS CONSULTED WITH THE SECRETARY OF THE DEPARTMENT OF THE INTERIOR REGARDING THE GRANGE PROJECT

8. On or about June 22, 2005, NPS consulted with the designee of the Secretary of

the Department of the Interior ("Secretary") regarding the Grange project. Consultations

regarding National Historic Landmarks have been delegated by the Secretary to the Associate

Director of Cultural Resources of NPS, as the manager of the National Historic Landmark

Program.

9. Specifically, on June 22, 2005, I spoke with Caroline Hall of the Associate

Director's office regarding the consultation needs of the Secretary for this project. Hall

responded that the Secretary did not wish to participate in consultations for this project.


I declare under penalty of perjury that the foregoing is true and correct.

Dated:         Boston, MA
               June 12, 2008

                                          _____
                                          DAVID USCHOLD

3

# Exhibit 1

**PROGRAMMATIC AGREEMENT**
Among
National Park Service,
Hamilton Grange National Memorial,

New York State Historic Preservation Office,

New York City Department of Parks and Recreation,
And
New York City Landmarks Preservation Commission
Pursuant to 36 CFR 800

Regarding the Rehabilitation and Relocation of the Alexander Hamilton House
287 Convent Avenue, New York, New York
3/24/06

**WHEREAS**, the National Park Service (NPS), proposes to relocate the Alexander Hamilton House (the "Grange") from its current (not original) location at 287 Convent Avenue to a nearby site in St. Nicholas Park more appropriate for preservation and interpretation of the Grange, and;

**WHEREAS**, the Grange, which itself is a National Historic Landmark (1960) and is located within the National Register listed Hamilton Heights Historic District (1983) and also within a New City Landmarks Preservation Commission Historic District, was moved in 1889 from its original historic location and cannot be adequately preserved and interpreted as the home of Alexander Hamilton in its current location, and the NPS will move the Grange into a more appropriate setting allowing for its rehabilitation and interpretation, and as specified in the park's enabling legislation of 1962, and;

**WHEREAS**, the NPS will complete the rehabilitation of the structure in its new location, and;

**WHEREAS**, in place of the relocated Grange at the Convent Avenue site, the NPS will initiate and actively support a public/private partnership to plan and develop a new multi-use facility that will achieve the original goals of providing educational and community space, and;

**WHEREAS**, the NPS will pursue the replacement facility as a separate action and will consult with the New York State Historic Preservation Officer (NY SHPO), and New York City Landmarks Preservation Commission (NYC LPC) for planning and design of that facility as a separate Section 106 action, and;

**WHEREAS**, the NPS has completed a General Management Plan/Environmental Impact Statement (1995) conceptualizing the plan and also an Environmental Assessment (2000) to gain an easement from New York City for the relocation site, and;

**WHEREAS**, the NPS has consulted with the New York City Department of Parks and Recreation (NYC Parks) and the NYC LPC during planning and design for this project and has

Page 1 of 5

invited them to be consulting parties on this agreement, and;

**WHEREAS**, the NPS, in consultation with the NY SHPO, has determined that St. Nicholas Park is not eligible for listing in the National Register and therefore the relocation of the Grange to the park will not have an effect on historic resources within the park (NY SHPO to NPS 9/21/2004), and;

**WHEREAS**, the NPS has completed a Historic Structures Report (1980) for the Grange, and;

**WHEREAS**, the NPS has completed an archeological investigation (Phase 1A and 1B, 2003/2004) of the Convent Avenue site and the relocation site in St. Nicholas Park, and no further archeological work will be necessary for the project, and;

**WHEREAS**, the NPS is currently developing the design and construction documents necessary for moving the structure and for completing its rehabilitation and the NPS may conduct monitoring, testing and investigations of the historic structure involving ground disturbing activities or intrusion into historic fabric for research or inventory purposes, and;

**WHEREAS**, the NPS has determined that the relocation and rehabilitation of the NHL Grange will have an effect on the Grange itself and on the surrounding Hamilton Heights Historic District due to the removal of the Grange from the District in which the Grange is a contributing structure, and;

**WHEREAS**, the NPS has consulted with the New York State Historic Preservation Office (NY SHPO) pursuant to 36 CFR Part 800, regulations implementing Section 106 of the National Historic Preservation Act of 1966, and with the Advisory Council on Historic Preservation (Council), which declined to comment on the project at an early planning stage, and deferred to the findings of the NY SHPO, and;

**WHEREAS**, the NPS has elected to execute a Programmatic Agreement instead of following standard process pursuant to 36 CFR 800 because the NPS desires to adjust the standard review process to enhance NY SHPO, NYC Parks, and NYC LPC participation to ensure that the project is compatible with the historic and architectural qualities of Hamilton Grange and the surrounding Hamilton Heights Historic District and that it is compliant with the stipulations set forth in Landmarks Preservation Commission Report 94-0003, issued August 3, 1993, and responsive to the recommended approaches to new construction set forth in the *Secretary of the Interior's Standards for the Treatment of Historic Properties with Guidelines for Preserving, Rehabilitating, Restoring and Reconstructing Historic Buildings*, and;

**NOW, THEREFORE**, the NPS, NY SHPO, NYC Parks, and NYC LPC agree that the undertaking shall be implemented in accordance with the following stipulations in order to take into account the effect of the undertaking on historic properties involved.

### Stipulations

The NPS will ensure that the following measures are carried out:

1. The NPS will amend the existing Historic Structures Report (HSR) for the Grange to meet the needs of the relocation/rehabilitation project and accurately document its historic character and integrity. Prior to implementing changes to the Grange, the NPS will submit the amended HSR to the NY SHPO, NYC Parks, and NYC LPC for review and comment.

2. The NPS will coordinate with the Keeper of the National Register of Historic Places and the NY SHPO to take steps necessary to ensure that the Grange remains eligible for and listed in the National Register upon completion of this project. The property's NR documentation will be updated after the move is complete as outlined by Chapter 36 CFR 16.14,(b)5 "Relocating properties listed in the National Register."

3. The NPS will share information about research or inventory work including monitoring, testing, and investigations with the NY SHPO, NYC Parks, and NYC LPC.

4. The NPS, in consultation with the NY SHPO, NYC Parks, and NYC LPC will develop and implement a landscape design for Hamilton Grange at its new location within St. Nicholas Park that is interpretive in nature, rather than a restoration of its original setting.

5. NPS, in consultation with the NY SHPO, NYC LPC, and NYC Parks shall develop and implement an Unanticipated Discoveries Plan that will address what should occur if any potentially significant archaeological resources and/or human remains are encountered during any phase of this project.

6. The NPS will ensure that all plans for the relocation and rehabilitation of the Grange are developed according to *The Secretary of the Interior's Standards for the Treatment of Historic Properties*, are consistent with the guidance and recommendations set forth in the amended HSR, are developed in consultation with the NY SHPO, NYC Parks, and NYC LPC and the park's cultural resource advisor group, and are submitted to the NY SHPO, NYC Parks, and NYC LPC for review and comment. In addition, NPS will follow to NYC Parks' reasonable satisfaction the specific measures designed to address the temporary construction impacts associated with the physical relocation of the Grange as set forth in Parks' Part III Negative Declaration regarding the relocation of the Grange dated February 9, 2001.

7. The NPS will submit an application and plans to the LPC for issuance of a permit (MISC) as per stipulations set forth in LPC Report 94-003.

8. The NPS will ensure that particular care is taken during the project to protect the museum collection currently housed in the Grange and the statue outside the Grange. The collection will be packed and stored off-site in an in-door location during the project, using qualified art riggers for objects as necessary. The collection will be protected in accordance with NPS Director's Order 28 (DO-28) and the NPS Museum Handbook.

9. The NPS will move the Grange according to the guidelines specified for moving historic structures within the *NPS Management Policies 2001* (5.3.5.4) and in accordance with the approaches recommended in *Moving Historic Buildings* (John Obed Curtis, 1989).

The structure shall be moved by a professional mover who has the capability and expertise to move historic structures.

10. If left unoccupied during the move, the NPS shall ensure that the Grange is properly secured and protected from weather damage and vandalism during the period it is unoccupied.

11. The NY SHPO, NYC Parks, and NYC LPC may monitor construction activities pursuant to this agreement, after providing 24-hour notification to the NPS beforehand. The NPS will cooperate with the NY SHPO, NYC Parks, and NYC LPC in carrying out any monitoring and review responsibilities.

12. Unless otherwise agreed to beforehand, the NY SHPO, NYC Parks, and NYC LPC will be afforded a 30-day period, commencing on receipt of NPS materials, to comment on submitted information and proposals. The NPS and the NY SHPO, NYC Parks, and NYC LPC will make every effort to resolve disputes regarding the completion of the terms of this agreement. If the parties cannot reach agreement, the NPS or the NY SHPO may request the participation of the Advisory Council on Historic Preservation to assist in resolving the dispute in accordance with 36 CFR 800.

13. Parties to this Programmatic Agreement may request that it be it be amended, whereupon the parties will consult in accordance with 36 CFR Part 800 to consider such amendment.

14. Signatory parties to this agreement may request termination of this agreement by providing ninety (90) calendar days notice to all signatory and concurring parties, provided that the parties will consult during the period prior to termination to seek agreements on amendments or other actions that would avoid termination. In the event of termination, the NPS will request the comments of the Council, in accordance with 36 CFR Part 800.

15. In the event the NPS does not carry out the terms of this Programmatic Agreement the NPS will comply with 36 CFR Part 800 with regard to individual undertakings covered by this Programmatic Agreement.

16. This PA will continue in full force and effect until five years after the date of the last signature. At any time in the sixth-month period prior to such date, the NPS may request the signatory and concurring parties to consider an extension or modification of this agreement.

Execution of this Programmatic Agreement by the NPS, NY SHPO, NYC Parks, and NYC LPC and implementation of its terms evidences that the NPS has afforded the NY SHPO, NYC Parks, and NYC LPC an opportunity to comment on the relocation/rehabilitation of the Grange, Hamilton Grange National Memorial and that the NPS has taken into account the effects of the project on historic properties.

**Signatories:**
**National Park Service**

_____                                    3/27/06
James R. Pepper                                                          Date
Superintendent, Hamilton Grange National Memorial, Manhattan Sites

**New York State Historic Preservation Office**

FOR  _Paul J. Huish_, Dep. NYSHPO                               4/5/06
Bernadette Castro                                                       Date
New York State Historic Preservation Officer


**Consulting Parties:**
**New York City**

_____                                    5/3/06
Adrian Benepe                                                          Date
Commissioner, New York City Department of Parks and Recreation

_____                                    5/10/06
Robert B. Tierney                                                      Date
Chairman, New York City Landmarks Preservation Commission

**Exhibit 2**



# United States Department of the Interior

NATIONAL PARK SERVICE

Hamilton Grange National Memorial
One Bowling Green, Room 419
New York, New York 10004

IN REPLY REFER TO:

D2217 (HAGR-DSC 15984)

June 2, 2006

Mr. Don L. Klima, Director
Advisory Council on Historic Preservation
1100 Pennsylvania Avenue, NW, Suite 803
Washington, DC 20004

Subject:    Update on National Park Service Proposal to Relocate and Rehabilitate Hamilton
Grange; and

Programmatic Agreement Among the National Park Service, Hamilton Grange
National Memorial, New York State Historic Preservation Office, New York City
Department of Parks and Recreation, and New York City Landmarks Preservation
Commission Pursuant to 36 CFR Part 800

Dear Mr. Klima:

The purpose of this correspondence is to convey to your office a signed, fully executed
Programmatic Agreement for the National Park Service (NPS) undertaking to relocate the
Alexander Hamilton House (the "Grange") from its current (not original) location at 287 Convent
Avenue, New York City to an approved 0.093-acre site nearby in St. Nicholas Park. The NPS
would also like to provide an update on current thinking regarding the physical move of the
structure.

As your office is aware, relocation of Hamilton Grange is called for in the park's 1962 enabling
legislation. The NPS initiated long-term planning for the move in the 1990s, culminating with a
General Management Plan / Environmental Impact Statement and a Record of Decision in 1995.
The NPS determined that the preferred alternative would have an adverse effect on the Grange
and the Hamilton Heights Historic District. Consequently as the NPS began to develop plans to
implement the relocation of the Grange in consultation with the New York State Historic
Preservation Office (NYSHPO), The New York City Landmarks Preservation Commission, and
New York City Department of Parks and Recreation, a Programmatic Agreement among these
parties was developed.

As the NPS moved beyond the conceptual stage for this undertaking, it became apparent that the
original plan of moving the Grange in one piece would have too great an impact on contributing
structures of Hamilton Heights Historic District, specifically St. Luke's Church. Hamilton
Grange is enclosed by an apartment building on one side and by St. Luke's Church on the other.

The original plans were essentially to move the Grange whole by lifting the structure as a single unit from within its tight quarters. Moving the Grange in one piece, however, would necessitate either disassembling masonry features of the church or lifting the Grange high enough to clear the church's stone portico. Ramifications of moving the structure in one piece and consideration of potential impacts to the masonry structure of St. Luke's Church lead the NPS to consider moving the Grange in two pieces rather than as a whole.

Therefore, in consultation with the New York State Historic Preservation Office the current NPS proposal is to move the structure in two pieces by detaching one wing of the Grange. The NPS has determined that moving the Grange in two pieces would not disturb masonry features of the church. The NYSHPO visited the Grange on May 11, 2006, in the company of NPS historic architects and preservationists. The process of cutting the building prior to its move, moving the structure, placement of the Grange in its new location in St. Nicholas Park, and subsequent rehabilitation of the structure were discussed.

If you have any comments on the proposed undertaking, please contact Superintendent, Hamilton Grange National Memorial at the above address, or by telephone at 212-825-6990.

Sincerely,

James R. Pepper
Superintendent

Enclosure:
Programmatic Agreement

cc: w/o copy enclosure
Bernadette Castro, Commissioner
New York State Office of Parks,
Recreation and Historic Preservation
Empire State Plaza
Agency Building 1
Albany, NY 12238

Beth Cummings
New York State Historic Preservation Office
Peebles Island Resource Center
P.O. Box 189
Waterford, NY 12188-0189

NPS-HAGR-Superintendent
NPS-NER-Uschold
NPS-DSC-Petersen, Sikoryak

**Exhibit 3**



# United States Department of the Interior

NATIONAL PARK SERVICE
Manhattan Sites
26 Wall Street
New York, NY 10005

Castle Clinton N.
Federal Hall N.I
General Grant N. I.
Hamilton Grange I M.
Theo. Rooseve
Birthplace N.H
St. Paul's
Church N.H.S

IN REPLY REFER TO:

D2217 (DSC-HAGR 15984)

Via FEDERAL EXPRESS

December 12, 2006

Commissioner Bernadette Castro
State Historic Preservation Officer
New York Historic Preservation Office
Peebles Island
P.O. Box 189
Waterford, New York 12188-0189
Attention: Beth Cumming

Subject: Hamilton Grange National Monument
Design and Development Drawings and 95% Historic Structures Report

Dear Commissioner Castro:

As your office is aware, the National Park Service (NPS) is planning to relocate the Hamilton Grange National Memorial from its present location to an approved location in St. Nicholas Park in accordance with the Hamilton Grange National Memorial enabling legislation of 1962. The undertaking would also rehabilitate the aging structure.

To support this effort and in compliance with the programmatic Agreement (PA) among the New York Historic Preservation Office, the New York City Department of Parks and Recreation, and the New York City Landmarks Preservation Commissioner of May 2006 the National Park Service is submitting the following package for your information:

1. Design Development Drawings
2. Amended Historic Structures Report 95% (HSR)

The Design Development (DD) drawings illustrate the most current plan for relocating and rehabilitating Hamilton Grange NM. The DD drawings include updated site plans and illustrations of the move alternatives. The final method for moving Hamilton Grange NM will not be determined until the move contractor has been hired. The amended HSR is 95% completed containing updated information based on limited architectural probe investigations at Hamilton Grange NM during the summer and fall of 2006. This investigation enabled a feature inventory and conditions assessment resulting in treatment recommendations for dismantling and protecting building components during the relocation. The amended HSR is intended to address the needs of the relocation/rehabilitation project by documenting the historic integrity of specific elements of Hamilton Grange NM to inform the move and rehabilitation. Additional information uncovered during construction may be added to the HSR before it is finalized.

D2217 (DSC-HAGR 15984)
(Continue)
Page 2

The National Park Service thanks you for consulting with us on this project. We will continue to update you as plans are finalized. If you have any questions or require additional information, please do not hesitate to contact Acting Superintendent Sean McGuinness at (212) 825-6990 or by electronic mail at Sean_McGuinness@nps.gov. In addition, you may contact Historic Architect Stephen Spaulding, National Park Service, Northeast Regional Office at (978) 970-5127 or by electronic mail at Stephen_Spaulding@nps.gov or Cultural Resource Specialist Jane Sikoryak at (303) 969-2425 or by electronic mail at jane_sikoryak@nps.gov.

Sincerely,

Sean McGuinness
Acting Superintendent
Manhattan Sites, National Park Service
Hamilton Grange National Memorial

Enclosures:    Design Development Drawings
               Amended Historic Structure Report

Cc: w/enclosures

Advisory Council on Historic Preservation
Old Post Office Building
1110 Pennsylvania Avenue, NW Suite 809
Washington, DC 20004
Attention: Kelly Yasaitis Fanizzo

Cc: w/o enclosures
New York City Department of Parks and Recreation
The Arsenal Central Park
830 5th Avenue
New York, New York 10021

New York City Landmarks Preservation Commission
One Centre Street, 9th Floor North
New York, New York 10007

**Exhibit 4**



**United States Department of the Interior**

NATIONAL PARK SERVICE

National Parks of New York Harbor
26 Wall Street
New York, New York 10005

IN REPLY REFER TO:
D2217 (DSC-HAGR 15984)

CERTIFIED MAIL – Return Receipt Requested

May 21, 2007

Commissioner Carol Ash
State Historic Preservation Officer
New York State Department of Parks, Recreation and Historic Preservation
Peebles Island
P.O. Box 189
Waterford, NY 12188-0189
Attn: Beth Cumming

Subject:  Hamilton Grange National Monument: Construction Documents

Dear Commissioner Ash:

As your office is aware, the National Park Service (NPS) is planning to relocate the Hamilton
Grange from its present location to an approved location in St. Nicholas Park in accordance with
the Hamilton Grange National Memorial enabling legislation of 1962. The undertaking would also
rehabilitate the aging structure. In December 2006 in compliance with the Programmatic
Agreement (PA) among the New York State Historic Preservation Office, the New York City
Department of Parks and Recreation and the New York City Landmarks Preservation
Commission the NPS sent the 95% draft Historic Structure Report Update to your office for your
review along with design development drawings.

The purpose of this correspondence is to submit to your office for your comment a copy of the
100% draft Construction Documents. The draft construction documents describe the most current
plan for relocating and rehabilitating the Grange. The CDs include updated site plans and
illustrations of the move alternatives. The final method for moving the Grange will not be
determined until the move contractor has been hired.

The summary of work can be found in the Project Specifications Section 01110. Special
construction requirements are described under 01110.1.4 in the Project Specifications.
Information on landscaping can be found in Section 02785. Information on moving the structure
is found in Section 02990. Please see the construction drawings Sheet LS102 for the St. Nicholas
Park site plan and Sheet LS101 for the Convent Avenue site plan. Landscape details can be found

on sheets LS501 through LP507. Work to be done on the Grange is shown on sheets R1.01 through A3.02. Details are found on subsequent pages.

Thank you for consulting with us on this project. We will continue to update you as plans are finalized. If you should have any questions or require additional information, please do not hesitate to contact Historical Architect Stephen Spaulding, NPS Northeast Regional Office, at stephen_spaulding@nps.gov or at (978) 970-5127; or Denver Service Center Cultural Resource Specialist Jane Sikoryak at jane_sikoryak@nps.gov or at (303) 969-2425.

Sincerely,

Maria Burks
Superintendent, Hamilton Grange National Memorial

Enclosure:    Draft Construction Documents

cc: all w/o enclosure
Advisory Council on Historic Preservation
Old Post Office Building
1100 Pennsylvania Avenue, NW, Suite 809
Washington, DC 20004
Attention: Kelly Yasaitis Fanizzo

New York City Department of Parks and Recreation
The Arsenal, Central Park
830 5th Avenue
New York, NY 10021
Attention: Commissioner Adrian Benepe

New York City Landmarks Preservation Commission
One Centre Street, 9th Floor North
New York, NY 10007
Attention: Jared Knowles

bcc: w/o enclosures
MASI – Deputy Superintendent
NER – Uschold, Spaulding
DSC – Petersen, Sikoryak

**Exhibit 5**

CB9M

16-18 Old Broadway
New York, NY 10027
(212) 864-6200/Fax #(212) 662-7391

COMMUNITY BOARD #9, MANHATTAN

Scott Stringer
President, Borough of Manhattan

Patricia A. Jones
Chair

Clinton R. Thompson
First Vice-Chair

Yvonne Stennet
Second Vice-Chair

Theodore Kovaleff
Secretary

Jane Arrendell
Assistant Secretary

Anthony Fletcher
Treasurer

Diane Wilson
Assistant Treasurer

Lawrence A. McClean
District Manager

May 9, 2008

Maria Burks, Commissioner
National Parks of New York Harbor
National Park Service
26 Wall Street
New York, New York 10005

Dear Commissioner Burks:

Here enclosed is a copy of our letter of May 6, 2008 to Don Klima, Office
of Federal Agency Programs, and Advisory Council on Historic
Preservation.

I am certain that we are in mutual agreement in wanting resolution of the
outstanding issues concerning the reconfiguration of the Hamilton Grange
National Memorial with the historic restoration of the Grange itself at its
center core.

Sincerely,

Patricia A. Jones
Chair

Copy w/o Attachment:
    Don Klima, Director, Office of Federal Agency Programs
    Advisory Council on Historic Preservation

SERVING HAMILTON HEIGHTS/MANHATTANVILLE & MORNINGSIDE HEIGHTS

**CB9M**  16-18 Old Broadway
New York, NY 10027
(212) 864-6200/Fax #(212) 662-7396

COMMUNITY BOARD #9, MANHATTAN

Scott Stringer
President, Borough of Manhattan

Patricia A. Jones
Chair

Carolyn R. Thompson
First Vice-Chair

Jeanne Stennett
Second Vice-Chair

Theodore Kovaleff
Secretary

Jane Amsden
Assistant Secretary

Anthony Fletcher
Treasurer

Diane Wilson
Assistant Treasurer

Lawrence J. McClean
District Manager

May 6, 2008

Mr. Don Klima, Director
Office of Federal Agency Programs
1100 Pennsylvania Ave., NW, Suite 803
Advisory Council on Historic Preservation
Old Post Office Building
Washington, DC 20004

Dear Mr. Klima:

Our Board is urgently concerned about the Hamilton Grange,
named a National Historic Landmark in 1960, as evidenced by the
General Board's resolution of March 20, 2008 voted 27 – 3 – 2 (Refer
to Attachments.)

The National Park Service has reversed two central aspects of the
*Final General Management Plan/EIS* for the Hamilton Grange
National Memorial published in 1995, reversals which will cause
irrecoverable damage to the project as originally planned. We here
turn to the Advisory Council, created to protect historic properties
from harmful federal agency decision error, to assist in our effort to
reclaim and have implemented the original 1995 plans in whose
development CB9, along with the Hamilton Heights community,
has played a significant role.

First, without consultation, funding for an enlarged information
center envisioned as advancing community preservation efforts as
well as elucidation of Hamilton's profoundly significant life and
work has been abruptly cancelled.

However, the immediate threat to the project is the design change
in the historic restoration of the Grange itself – a 180 degree turn in

Mr. Don Klima
May 6, 2008
Page -- 2

orientation, from the house facing southwest to northeast -- that would diminish
the restoration's authenticity causing misrepresentation of both the house's
exterior setting and its distinctive interior use of its exterior views. Despite
strong efforts by CB9's Landmarks Committee, joined by the Hamilton Heights
historic preservation leadership, to consult with NPS Commissioner Maria Burks
on the orientation reversal, there has been a complete rebuff to our concerns. We
challenge both the decision-making process at work in this reversal of design and
its threatened damage to a National Historic Landmark of incalculable value, one
so far preserved, almost miraculously, without serious damage.  Here is a
genuine emergency, for excavation and foundation-laying has begun -- far short
of any  genuine attempt by the Commissioner to deal respectfully with the
soundly based challenge to the proposed new orientation that we have
presented.

Our request to the Advisory Council:
We write to ask that the Advisory Council explore with us all appropriate steps
to be taken by CB9 toward revision of the programmatic agreement for the
Hamilton Grange restoration as currently written – a revision that will include
membership for both CB9 and the Hamilton Heights preservation leadership.

But first we ask that you immediately intervene on the issue of the orientation
now under excavation. CB9 has a National Historic Landmark at risk within our
advisory responsibility and we must insist on NPS adherence to the GMP's
warrant of an authentic historic restoration. The Commissioner's decision to
shut the door on further orientation evaluation after April 12, 2007, to let the
contract in September without notice to CB9, to rule out further expert opinion --
a jury, for instance, of national standing to address the best possible location for
the Grange within its permanent new site – these decisions are problematic and
cannot be given undue deference in the face of the continuing vulnerability of a
national legacy of the very highest order.

Mr. Don Klima
May 6, 2008
Page -- 3

The following detailed summary addresses the points made above:

The broad community effort leading to development of the *GMP/EIS:*
An expanded Hamilton Grange National Memorial – with an historic restoration
of the Hamilton home as its centerpiece – has been an important focus for this
Board, the Hamilton Heights community, and well-wishers across New York
City since the late 1980s.  While the National Park Service became owner of the
Hamilton Grange in 1964, it was not until the Hamilton Heights Homeowners
Association, in 1987, initiated a neighborhood effort to persuade the NPS to
move ahead with a full restoration of the Grange in St. Nicholas Park and
development of a greatly expanded information center that this nationally
significant project began to move forward.

The Hamilton Heights Homeowners Association contributed $8500 to the NPS,
raised through their annual June House and Garden Tours within the Hamilton
Heights Historic District, the NYC Landmark designation protecting the fine
turn-of-century houses now filling the boundary lines of the original thirty-two-
acre Hamilton estate.  Then followed the Memo of Agreement offered HHHA by

NPS which named the organization as a planning partner in the development of
an enlarged National Memorial, an association that serves the project today.

Congressman Charles Rangel, enlisted as prime project sponsor by the com-
munity's preservation leadership, then formally brought this Board into its full
consulting role by determining that our vote of approval, in 1994, would serve as
his key basis for moving forward to gain the necessary federal appropriations.

Here then is the broad partnership with National Park Service – CB9, HHHA,
and the community residents of an actively preservation-minded designated
Historic District,  as well as the sponsorship of Congressman Rangel -- that led us
to the agreed upon terms and dynamic joint commitment that are documented,
even celebrated, in the *Final General Management Plan/EIS* published by the
National Park Service, Denver Service Center, 1995.

Mr. Don Klima
May 6, 2008
Page -- 4

### Reversals in the GMP/EIS threatened:

However, recent changes in NPS leadership at Federal Hall, as the recent Board resolution [Refer to Attachments] makes clear, have brought two startling threats to the

agreements won during years of a shared working vision. First, CB9 learned that we have an enormous problem to address ahead when James Pepper, replacing retiring Superintendent of Manhattan Sites Joseph Avery and now himself retired, came to our September 2005 General Board meeting to report that funding for the information center on the NPS Convent Avenue site will no longer be available as pledged in the GMP. We will address this funding need with the support of Congressman Rangel. Our board was intensively involved during 1987-1994 with the vision and planning for an enlarged National Memorial as fully documented in the *GMP/EIS*. The center will focus on the history and preservation of the entire Hamilton Heights – Sugar Hill neighborhood and we will see its development through.

But immediately we face an equally startling reversal in the historic restoration of the Grange itself, already under excavation. Again, we believe that the proposal to reverse the house's original orientation, to turn it 180 degrees from facing SW to face NE, places this National Historic Landmark under our advisory responsibility at risk of an adverse effect that will seriously damage the integrity of this nationally significant federal project. We have not been able to persuade the recently arrived Commissioner of National Parks of New York Harbor, Maria Burks, named Superintendent of Manhattan Sites in February 2007, that the NPS is terribly mistaken in its new design for Hamilton's house in the park. In urgent appeal to the Advisory Council, we detail our concerns:

### The GMP emphatically directs an historic orientation for the house:

> Based on research, in its new location the Grange's exterior would be restored as closely as possible to its historic appearance, with all doors, windows, and porches in their original places. The main door would be relocated to its original position, and the entrance porch would be reconstructed. The house would be oriented to the southwest, and visitors would approach the house from the northeast as Hamilton's guests would

Mr. Don Klima
May 6, 2008
Page -- 5

> have done.  Visitors would enter the house through a new, fully accessible
> doorway on the northeast to an orientation center on the ground floor
> level...A curving walk would lead from 141st Street around the house to its
> formal front entrance.... Guests attending ceremonies and special com-
> memorative occasions would enter through the restored front door.
> > *Final General Management Plan/EIS*  p. 19

The GMP further emphasizes that:

> Land transfer and replacement,  future park maintenance, landscaping
> and other environmental issues, and house orientation issues would be
> solved through the involvement of  the friends group, local organizations,
> ... agencies such as DPR and the State Historic Preservation Office. p. 18

Hamilton and his architect, John McComb, Jr., one of the country's then out-
standing architects, professionally trained in England, whose work includes New
York's City Hall (with J.F. Mangin), faced the Grange SW toward the sun across
open grounds -- without central heat or light, the choice of solar orientation was
a key issue. The St. Nicholas Park site, less than an acre -- the meager unbuilt
remainder of the Hamilton estate at its SW corner and now NYC's permanent
easement to the federal government -- nevertheless affords the house a view
south across 150 feet of lawn bounded by CCNY's Shepard Hall on the west and
overlooking the park's extension southeast along its tree-filled eastern slope.  The
house's western elevation will be overshadowed by CCNY's engineering
building.  The northeast elevation will confront heavily trafficked 141st St.  The
Grange's original site, at the highest point of the Hamilton estate with open
views in all directions, is not replicated here but key similarities, views into the
park, the front entrance facing SW, Hamilton's office and the dining room facing
down the eastern slope, will recall, if imperfectly, the Grange' original setting.

The Grange must retain a SW orientation so that it can be viewed from CCNY's
St. Nicholas Terrace and from within the park as in its originally sylvan context.
This solar orientation will direct the play of light within the Grange so as to
reclaim its most distinctive interior element -- the dining room's tall mirrored

Mr. Don Klima
May 6, 2008
Page -- 6

panels, arranged to reflect the views through its elegant bay windows, once again overlooking a tree-filled eastern slope, views lost completely if the octagonal room's mirrored windows were to be shifted to face west directly into the rear wall of City College's engineering building.

The NPS's reversed design would rotate the front elevation 180 degrees from SW to face 141st St. But because the Federal era villa's front and rear elevations are nearly identical and equally handsome, nothing is lost, everything gained, by locating the historically NE elevation -- as beautifully drawn in the GMP -- alongside the street's noise and traffic while protecting the visitor's views and enjoyment of the Grange's original SW front within the more secluded open space of the Park.

Fortunately, because the house is symmetrical, it can be placed according to its historic orientation on the foundation about to be poured into the St. Nicholas Park excavation without further major expense or extensive delay. [Refer to Attachments: NPS diagrams – the present NPS proposal and "Conceptual Layout Option 1", the GMP historic orientation which was prepared for the site visit of 4/12/07.]

**CB9's clear negative response to the NPS reversed orientation:**
If CB9 learned of funding loss in 2005, we knew nothing of a full 180 degree reversal of the Grange orientation until six members of our Landmarks Committee were called to a meeting at the Municipal Art Society on December 21, 2006, when this was mentioned by NPS architect Stephen Spaulding in the context of talking about moving the Grange into the Park. All CB9 members present challenged the faulty orientation change as inauthentic and a break in faith with NPS's pledge to the community of an historic design. Harlem architectural historian Michael Adams eloquently disputed the change and MAS Vice President Frank Sanchis, former faculty member in the Columbia University Graduate Preservation Program, advised that the move be postponed until the issue could be further studied.

Now named Superintendent of Manhattan Sites, Commissioner Maria Burks and architect Stephen Spaulding met on April 9th in our CB#9 office with members of the Landmarks Committee where the objections voiced on December 21, 2006

Mr. Don Klima
May 6, 2008
Page -- 7

were elaborated and again urgently pressed by the ten or so present. A site visit
was scheduled for April 12th, attended by Michael Adams and Ron Melichar,
former President of the Hamilton Heights Homeowners Assoc. and now the
Hamilton Heights/West Harlem Community Preservation Organization, and two
CB#9 Landmarks Committee members, where the Commissioner indicated that
there would not be further review of the historic orientation. This was confirmed
by her letter of April 17th to Carolyn Kent, Co-Chair of our Landmarks
Committee [Refer to Attachments].

The faulty approvals process:
During that same week, Commissioner Burks had received an approval of the
new NE orientation from the Landmarks Preservation Commission dated
April 10; she wrote on April 13 to the Art Commission that CB9 had approved a
new orientation in 2001 in connection with the Easement ULURP and that SHPO
and the Landmarks Preservation Commission had more recently approved it,
and on April 16 the Art Commission, with CB9 absent from the Hearing, then
also approved the NPS proposal. During the two discussions with CB9 and
preservationists Michael Adams and Ron Melichar, on April 9th and 12th, no
notice was given to us of the April 16 Hearing or of this wider approval process,
which in effect excluded both CB9 and our community from participation in the
approvals discussion. Further, no question was raised or clarification sought as
to whether there was any sound basis for the Commissioner's erroneous
assertion to others that CB9 had approved such an orientation change in 2001. In
fact, CB9's vote approving the ULURP application for the permanent easement
was simply that, a mapping change vote.

We do not believe that these approvals can be considered valid because CB9 as
well as resident community testimony was excluded from the approval process:

SHPO: We have worked extensively with the highly proficient NYS Historic
Preservation Office on National Register listing for the Hamilton Heights-Sugar
Hill Historic District, on the Tiemann Estate Residential Historic District
application now being readied for the State Board, on the eighteen S/N eligible
properties identified during our recent discussions with Columbia University on
their rezoning proposal for Manhattanville; on the question of designation for the

Mr. Don Klima
May 6, 2008
Page -- 8

entire Close of the Cathedral of St. John the Divine on which CB9 took a strong
positive stand;  on the Dormitory Authority of the State of New York financing of
a Teachers College dormitory tower in a low-rise corner of Morningside Heights,
where again CB9 was active, and it is inconceivable that CB#9 was not asked to
report our views to SHPO on the proposal of a direct reversal of a National
Historic Landmark orientation;

DPR:  Our Parks and Landmarks Committee has worked intensively with DPR
through the years on many aspects of Riverside Park, including the General
Grant National Memorial restoration of the 'city beautiful' viewing pavilion, and
on Morningside Park, our two great Olmsted legacies.  We have spent many
hours working together in planning sessions and at the annual budget hearings.
It is, again, inconceivable to us that DPR would give full support to the
orientation change but in do doing would exclude CB9 from their internal
discussion of this major historic restoration of a National Historic Landmark.

LPC:  CB9 has have worked successfully with the Commission on the Landmark
designation of the Hamilton Heights-Sugar Hill Historic District protecting over
400 structures, on the Hamilton Heights Historic District Extension, on
designation of the Hamilton Theatre and Lobby Building, two pavilions of St.
Luke's Hospital, the Riverside Church, a Croton Aqueduct gatehouse, a
Napoleon LeBrun Firehouse;  we have testified at length before the Commission
toward an Advisory Report disapproving changes in two designated IRT
subway stations and on the design approval for the pavilion within the General
Grant National Memorial.  We routinely testify before the full Commission on
our residents' Certificate of Appropriateness applications, always on the basis of
a full General Board vote.  We here challenge LPC, as we have before with the
IRT subway stations, that the orientation reversal was discussed only at staff
level, without Commission or Public Hearing, and that the approval when issued
neglects appropriate attention to the significant material consequences of the
orientation change upon the Landmark which surely constitute an adverse effect.

Art Commission: Here we have also testified on historic preservation issues
concerning the restoration of the designated Hooper Fountain; the Riverside
Drive at 148th St. tourelle for use as a tot lot;  the tripartite flagstaff beneath

Mr. Don Klima
May 6, 2008
Page -- 9

Riverside Church in Riverside Park -- and would have liked to participate fully in
the Hamilton Grange Hearing where we would have brought information
gleaned from his letters about Hamilton's instructions for his front garden.

CB9 will request review in each case. It is our belief that the NYC Charter asks
all agencies to report their community involvement to the appropriate
community board.

**The programmatic agreement and the consultation on its development:**
We learned only in late March of this year about the Programmatic Agreement
executed by NPS, SHPO, DPR, and LPC in spring 2006. Our Landmarks
Committee was not well informed on the 106 Review procedures and our study
now has come dangerously late in this National Historic Landmark situation.
New to the 106 review procedures and told nothing about the development of a
programmatic agreement, we were mystified by the sudden puzzling gap in
partnership. Nevertheless, in retrospect, it can be clearly recognized that the
Programmatic Agreement *vis a vis* the Hamilton Grange restoration interrupted,
even blocked, our normal working relations with the agencies named to the
consultation through creating a situation of approvals within a closed circle.

The most striking fact about the Agreement is that in four pages of stipulations
there is no reference to the community board, or to individual experts, or to the
Hamilton Heights community organizations, or even to the "public" knowledge
and intense interest in the Hamilton Grange as documented by the GMP. There
is no provision for Public Review, no plan for notification to the public or input
from the public on any issue. The Agreement takes no notice at all of the
partnership built during the pre-GMP/EIS years of intense discussion throughout
the Hamilton Heights community nor of the growth in trust toward NPS
demonstrated by the change from an 18 - 11 – 2 vote approving the Hamilton
project in 1994 to the 29 - 3 - 3 ULURP Easement approval of 2001, a growth in
trust which must now be viewed with some irony.

In the GMP, "local agencies" commenting on the proposed project are listed as
"City of New York Landmarks Preservation Commission, City of New York
Parks and Recreation, Community Board #9." We challenge our exclusion and

Mr. Don Klima
May 6, 2008
Page -- 10

the exclusion of Hamilton Heights preservation leadership and residents from
the Programmatic Agreement in theory conceived to facilitate the protection of
historic properties but in fact shearing away "local" close and continuing
involvement with all aspects of the National Memorial undertaking and the
active proprietorship of a community that considers the Hamilton Grange their
prized historic treasure. Restricted to an agency membership, the consultation
has lacked the close knowledge of the Grange gained among those attending
neighborhood meetings there for many years, or the close, lively interest in
Alexander Hamilton's sense of his house, gained through research by many in
this core support group, or even a sense of the weather, the seasonal social
calendar, the harvest of neighborhood issues that the house will both reap and
sow when once again it is a free-standing structure on open land.

**To review the 106 instructions on the Programmatic Agreement option:**

> 800.14 (b) (2) (i): "Members of the public", specifically leaders in
> the community preservation work done in the Hamilton Heights
> Historic District, with wide experience in working with City Parks,
> LPC, and SHPO, clearly apparent to NPS through their demonstrat-
> ed leadership in both initiating NPS interest in the historic
> restoration of the Hamilton Grange and then developing
> community support for this project, should have been included the
> consultation.

> (ii): "Public participation" – "appropriate to the subject matter and
> the scope of the program" – which was heavily utilized by NPS in
> the pre-1995 period through the meetings and hearings, including
> those convened by Congressman Rangel, involving a wide
> percentage of a very caring community should have been continu-
> ously involved in informational meetings until the present.

> ["In accordance with subpart A"]
> 800.2 (c) (1) (i): SHPO appears to have been remiss in not bringing
> pressure upon NPS to involve fully CB9, the Hamilton Heights
> organizations, and individuals well familiar to NPS as having

Mr. Don Klima
May 6, 2008
Page – 11

strong professional experience and concern for the historic
properties at risk in this complex project who should have been
brought into the consultation towards a programmatic agreement.

800.2 (c) (3):  Among our heavily involved local government,
elected representatives could easily have been identified or even
recommended by CB9 as conduits between residents and the
agency in the development of a programmatic agreement.

800.2 (c) (5):  as above

800.2 (d) (1):  It is evident that since 1995 there has been no serious
attempt by NPS at any time between the publication of the GMP
and the letting of the contract in September 2007 which closed
discussion of the Grange orientation to "seek and consider" the
"likely interest of the public in the effects upon historic properties."

(continuing 800.14.(b) (2) (ii):  Given the "nature of the program
and its likely effects on historic properties,"  in this case where an
entire house and its possessions are to be taken apart, moved,
reassembled in the very presence of the entire Hamilton Heights
community, the easily identified "individuals, organizations and
entities likely to be interested" should have been consulted and
included in the consultation on any programmatic agreement.

800.14 (b) (2) (iv):  Given the NPS failure to consult with any parties
known to CB9 except the Agreement's signatories, perhaps no
obligation was felt to notify CB9 or any Hamilton Heights party
"that a programmatic agreement has been executed" nor was
public notice given "before it takes effect" nor have "implementing
procedures" such as LPC's approval at staff level and lack of public
hearing on its advisory on the changed orientation been readily
available to the public.

Mr. Don Klima
May 6, 2008
Page -- 12

We believe that CB9 should have been first consulted on the development of the programmatic agreement and included in its membership from its beginning.

Had CB9 been given fair notice in 2006 that four agencies were bonding into an agreement that would limit their obligations to public review under 106, we would have argued actively for CB9 inclusion, for greater community leadership inclusion, and enlisted the help of NYC preservation leadership, of Congressman Rangel, and our whole array of elected officials in winning inclusion as mainstay signatories.

Further, SHPO tells us that the agreement writes its own rules for public review. Had CB9 been included in the consultation, even if not then named a signatory, we would have pressed in all appropriate ways for a strong requirement within the agreement for full disclosure to all responsible parties on all important issues and for timely public review.

In conclusion:

Our Board sincerely desires a return, now, to a soundly functional CB9/ community partnership with NPS. How else can a fully successful National Memorial be achieved within this historic area, site of the battle of Harlem Heights, the first revolutionary war victory and one in which Alexander Hamilton himself participated, the area then later chosen by Hamilton, aide to General Washington, friend of his presidency, author of the Federalist Papers, first Secretary of the United States Treasury, as the peaceful rural location for his "sweet" retirement estate.

Yours Sincerely,

Patricia Jones
Chair

cc: Kelly Yasaitis Fanizzo, Advisory Council on Historic Preservation
    Beth A. Cumming, Technical Dept., Historic Preservation Office, OPRHP
    Winthrop Aldrich, Deputy Commissioner for Historic Preservation, OPRHP

Mr. Don Klima
May 6, 2008
Page -- 13

Attachments:

      E-mail notice from NPS on moving dates for the Grange, 5/5/08

      CB9 resolution of March 20, 2008

      Letter from Commissioner Maria Burks to Carolyn Kent, 4/17/07

      NPS diagrams of proposed and historic orientations

**Exhibit 6**



*Preserving America's Heritage*

May 28, 2008

Ms. Patricia Jones
Chair
Community Board #9, Manhattan
16-18 Old Broadway
New York, NY 10027

**Ref:**    *Proposed Relocation of the Alexander Hamilton House (the "Grange")*
            *from 287 Convent Avenue to St. Nicholas Park, New York, New York*

Dear Ms. Jones:

The Advisory Council on Historic Preservation (ACHP) recently received your request for our
review of the National Park Service's (NPS) compliance with Section 106 of the National
Historic Preservation Act (NHPA) and its implementing regulations, "Protection of Historic
Properties" (36 CFR Part 800), for the referenced undertaking. Specifically, you ask that we
explore revisions to the 2006 Programmatic Agreement (PA) regarding the Rehabilitation and
Relocation of the Alexander Hamilton House executed among the NPS, the New York State
Historic Preservation Office (SHPO), the New York City Department of Parks and Recreation,
and the New York City Landmarks Preservation Commission, and intervene on the issue of the
physical orientation of the relocated Hamilton Grange.

We appreciate the ongoing dialogue that has occurred between our office and Ms. Carolyn Kent
of your organization. Per your request, we have investigated this matter with the NPS. We
understand the proposed undertaking is the relocation of the Hamilton Grange from its present
location at 287 Convent Avenue to a new location one block away in St. Nicholas Park, in
accordance with the Hamilton Grange National Memorial authorizing legislation of 1962. The
NPS published a Final Environmental Impact Statement/General Management Plan (EIS/GMP) in
1995 that supported the relocation of the Hamilton Grange to St. Nicholas Park. The EIS/GMP
provided for the relocated house to be facing the southwest, as was its original orientation.

While numerous community members and concerned citizens support the proposed relocation,
concern exists that orientation of the Hamilton Grange from the southwest to the northeast poses
an adverse effect to this historic property because it conflicts with the intent of its original setting
and disrupts the original solar effects to the designed interior. You assert that the NPS did not
consult with your organization or with other interested parties in the reorientation decision or in
the development of the 2006 PA.

When a federal agency elects to develop a PA, as the NPS did in 2006, to provide for a complex
undertaking it must provide for specific entities, including the SHPO and representatives of local
governments, to be brought into the consultation process. In addition, the regulations allow for

ADVISORY COUNCIL ON HISTORIC PRESERVATION

1100 Pennsylvania Avenue NW, Suite 803 • Washington, DC 20004
Phone: 202-606-8503 • Fax: 202-606-8647 • achp@achp.gov • www.achp.gov

2

additional consulting parties, including "[c]ertain individuals and organizations with a demonstrated interest in the undertaking...due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effect on historic properties" to be brought into the Section 106 process.

While the ACHP encourages agencies to interpret these provisions broadly, the federal agency, in this case the park Superintendent, has the final word on consulting party status of an interested party when that interested party is otherwise not entitled per 36 CFR 800.2(c) to be invited into the Section 106 consultation.

We understand that in the development of the 2006 PA, the NPS consulted only with certain stakeholder agencies and did not solicit the input of other interested members of the public. We understand further, however, that the NPS held at least one public meeting and worked to meet with individual community members following the execution of the PA in late 2006 and early 2007, prior to the initiation of any construction activities. We have been informed by the NPS that in April 2007, the Superintendent specifically revisited the park's decision regarding the orientation of the Hamilton Grange to the northeast and met onsite with community members to discuss this issue. Subsequently, the Superintendent confirmed the park's proposal to orient the Grange to the northeast.

After reviewing the information provided both by the NPS and your organization, we have decided not to ask the NPS to revisit the 2006 PA for this undertaking.

Thank you for bringing this matter to our attention. If you have any questions, please contact Kelly Yasaitis Fanizzo at 202-606-8583, or by e-mail at kfanizzo@achp.gov.

Sincerely,

Klima
Director
Office of Federal Agency Programs



*Preserving America's Heritage*

May 28, 2008

Ms. Yuien Chin
President
Hamilton Heights Homeowners Association
P.O. Box 565
Hamilton Grange Station
New York, NY 10031

*Ref:*     ***Proposed Relocation of the Alexander Hamilton House (the "Grange")***
          ***from 287 Convent Avenue to St. Nicholas Park, New York, New York***

Dear Ms. Chin:

The Advisory Council on Historic Preservation (ACHP) recently received your request for our review of the National Park Service's (NPS) compliance with Section 106 of the National Historic Preservation Act (NHPA) and its implementing regulations, "Protection of Historic Properties" (36 CFR Part 800), for the referenced undertaking. Specifically, you ask that we intervene on the issue of the physical orientation of the relocated Hamilton Grange.

We have also been contacted by the Community Board #9, Manhattan, and the Historic Districts Council. Pursuant to their and your request, we have investigated this matter with the NPS. We understand the proposed undertaking is the relocation of the Hamilton Grange from its present location at 287 Convent Avenue to a new location one block away in St. Nicholas Park, in accordance with the Hamilton Grange National Memorial authorizing legislation of 1962. The NPS published a Final Environmental Impact Statement/General Management Plan (EIS/GMP) in 1995 that supported the relocation of the Hamilton Grange to St. Nicholas Park. The EIS/GMP provided for the relocated house to be facing the southwest, as was its original orientation.

While numerous community members and concerned citizens support the proposed relocation, concern exists that orientation of the Hamilton Grange from the southwest to the northeast poses an adverse effect to this historic property because it conflicts with the intent of its original setting and disrupts the original solar effects to the designed interior. You assert that the NPS did not consult with your organization or with other interested parties in the reorientation decision or in the development of the 2006 Programmatic Agreement (PA) regarding the Rehabilitation and Relocation of the Alexander Hamilton House executed among the NPS, the New York State Historic Preservation Office (SHPO), the New York City Department of Parks and Recreation, and the New York City Landmarks Preservation Commission.

When a federal agency elects to develop a PA, as the NPS did in 2006, to provide for a complex undertaking it must provide for specific entities, including the SHPO and representatives of local governments, to be brought into the consultation process. In addition, the regulations allow for

ADVISORY COUNCIL ON HISTORIC PRESERVATION

1100 Pennsylvania Avenue NW, Suite 803 • Washington, DC 20004
Phone: 202-606-8503 • Fax: 202-606-8647 • achp@achp.gov • www.achp.gov

2

additional consulting parties, including "[c]ertain individuals and organizations with a demonstrated interest in the undertaking…due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effect on historic properties" to be brought into the Section 106 process.

While the ACHP encourages agencies to interpret these provisions broadly, the federal agency, in this case the park Superintendent, has the final word on consulting party status of an interested party when that interested party is otherwise not entitled per 36 CFR 800.2(c) to be invited into the Section 106 consultation.

We understand that in the development of the 2006 PA, the NPS consulted only with certain stakeholder agencies and did not solicit the potential input of other interested members of the public. We understand further, however, that the NPS held at least one public meeting and worked to meet with individual community members following the execution of the PA in late 2006 and early 2007, prior to the initiation of any construction activities. We have been informed by the NPS that in April 2007, the Superintendent specifically revisited the park's decision regarding the orientation of the Hamilton Grange to the northeast and met onsite with community members to discuss this issue. Subsequently, the Superintendent confirmed the park's proposal to orient the Grange to the northeast.

After reviewing the information provided both by the NPS and your organization, we have decided not to ask the NPS to revisit the 2006 PA for this undertaking.

Thank you for bringing this matter to our attention. If you have any questions, please contact Kelly Yasaitis Fanizzo at 202-606-8583, or by e-mail at kfanizzo@achp.gov.

Sincerely,

David Klima
Director
Office of Federal Agency Programs



*Preserving America's Heritage*

May 28, 2008

Mr. Simeon Bankoff
Executive Director
Historic Districts Council
232 East 11th Street
New York, NY 10003

**Ref:**  ***Proposed Relocation of the Alexander Hamilton House (the "Grange")
from 287 Convent Avenue to St. Nicholas Park, New York, New York***

Dear Mr. Bankoff:

The Advisory Council on Historic Preservation (ACHP) recently received your request for our review of
the National Park Service's (NPS) compliance with Section 106 of the National Historic Preservation Act
(NHPA) and its implementing regulations, "Protection of Historic Properties" (36 CFR Part 800), for the
referenced undertaking. Specifically, you ask that we intervene on the issue of the physical orientation of
the relocated Hamilton Grange.

We have also been contacted by the Community Board #9, Manhattan, and the Hamilton Heights
Homeowners Association. Pursuant to their and your request, we have investigated this matter with the
NPS. We understand the proposed undertaking is the relocation of the Hamilton Grange from its present
location at 287 Convent Avenue to a new location one block away in St. Nicholas Park, in accordance
with the Hamilton Grange National Memorial authorizing legislation of 1962. The NPS published a Final
Environmental Impact Statement/General Management Plan (EIS/GMP) in 1995 that supported the
relocation of the Hamilton Grange to St. Nicholas Park. The EIS/GMP provided for the relocated house to
be facing the southwest, as was its original orientation.

While numerous community members and concerned citizens support the proposed relocation, concern
exists that orientation of the Hamilton Grange from the southwest to the northeast poses an adverse effect
to this historic property because it conflicts with the intent of its original setting and disrupts the original
solar effects to the designed interior. You assert that the NPS did not consult with your organization or
with other interested parties in the reorientation decision or in the development of the 2006 Programmatic
Agreement (PA) regarding the Rehabilitation and Relocation of the Alexander Hamilton House executed
among the NPS, the New York State Historic Preservation Office (SHPO), the New York City
Department of Parks and Recreation, and the New York City Landmarks Preservation Commission.

When a federal agency elects to develop a PA, as the NPS did in 2006, to provide for a complex
undertaking it must provide for specific entities, including the SHPO and representatives of local
governments, to be brought into the consultation process. In addition, the regulations allow for

ADVISORY COUNCIL ON HISTORIC PRESERVATION

1100 Pennsylvania Avenue NW, Suite 803 • Washington, DC 20004
Phone: 202-606-8503 • Fax: 202-606-8647 • achp@achp.gov • www.achp.gov

2

additional consulting parties, including "[c]ertain individuals and organizations with a demonstrated interest in the undertaking...due to the nature of their legal or economic relation to the undertaking or affected properties, or their concern with the undertaking's effect on historic properties" to be brought into the Section 106 process.

While the ACHP encourages agencies to interpret these provisions broadly, the federal agency, in this case the park Superintendent, has the final word on consulting party status of an interested party when that interested party is otherwise not entitled per 36 CFR 800.2(c) to be invited into the Section 106 consultation.

We understand that in the development of the 2006 PA, the NPS consulted only with certain stakeholder agencies and did not solicit the potential input of other interested members of the public. We understand further, however, that the NPS held at least one public meeting and worked to meet with individual community members following the execution of the PA in late 2006 and early 2007, prior to the initiation of any construction activities. We have been informed by the NPS that in April 2007, the Superintendent specifically revisited the park's decision regarding the orientation of the Hamilton Grange to the northeast and met onsite with community members to discuss this issue. Subsequently, the Superintendent confirmed the park's proposal to orient the Grange to the northeast.

After reviewing the information provided both by the NPS and your organization, we have decided not to ask the NPS to revisit the 2006 PA for this undertaking.

Thank you for bringing this matter to our attention. If you have any questions, please contact Kelly Yasaitis Fanizzo at 202-606-8583, or by e-mail at kfanizzo@achp.gov.

Sincerely,

D     Klima
D       r
Office of Federal Agency Programs