UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FRIENDS OF HAMILTON GRANGE and :
DR. JOHN CARDWELL, :
: 
                        Plaintiffs, :    08 Civ. 5220 (DLC) (FM)
   v. :
:
DIRK KEMPTHORNE, Secretary of the Interior; :
U.S. DEPARTMENT OF THE INTERIOR; :
MARY A. BOMAR, Director of the National :
Park Service; NATIONAL PARK SERVICE; and :
MARIA BURKS, Commissioner of National Parks :
of New York Harbor and Superintendent of :
Manhattan Sites, :
:
                        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE GOVERNMENT'S MOTION TO DISMISS THE AMENDED COMPLAINT

                                              LEV L. DASSIN
                                              Acting United States Attorney for the
                                              Southern District of New York
                                              Attorney for the Defendants
                                              86 Chambers Street, 3rd Floor
                                              New York, New York 10007

LAWRENCE H. FOGELMAN
Assistant United States Attorney
   Of Counsel

# TABLE OF CONTENTS

I.   PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT CONFER
     STANDING .................................................... 1

II.  LIVING NEAR THE GRANGE DOES NOT CONFER STANDING .............. 4

III. PLAINTIFFS' CLAIMS REGARDING THE
     CONVENT AVENUE SITE ARE NOT RIPE ............................. 8

CONCLUSION ....................................................... 10

In their opposition to the Government's motion to dismiss ("Pl. Opp."), plaintiffs fail to demonstrate that the Court has subject matter jurisdiction over this proceeding. Plaintiffs cannot demonstrate standing by relying on conclusory allegations in their amended complaint, nor on the fact that they live near the Hamilton Grange National Memorial (the "Grange"). Plaintiffs also fail to establish jurisdiction over their claim that the Grange had to be moved simultaneously with the development of the Convent Avenue site. That claim is moot, as the Grange has already been moved. In any event, the claim is not ripe because NPS is presently undertaking further review of how to develop the Convent Avenue site and seeking public input in that process.

## I.   PLAINTIFFS' CONCLUSORY ALLEGATIONS DO NOT CONFER STANDING

Plaintiffs cannot avoid the dismissal of this action by relying exclusively on conclusory allegations in the amended complaint to establish standing. Plaintiffs have the burden of establishing that the Court has subject matter jurisdiction over the complaint: "[I]t is the burden of the party who seeks the exercise of jurisdiction in his favor, . . . clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) (citations omitted). This burden cannot be discharged by relying on conclusory allegations. "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings.'" FW/PBS, Inc., 493 U.S. at 231 (citation omitted). If plaintiffs "fai[l] to make the necessary allegations, [they have] no standing." Id. (citation omitted). See also Warth v. Seldin, 422 U.S. 490, 518 (1975) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers.").

Both in the amended complaint and plaintiffs' opposition to the Government's motion to dismiss, plaintiffs articulate only conclusory allegations of harm. Specifically, plaintiffs claim

that "the decision to abandon the community and interpretive center, thus leaving the Avenue site fallow, the decision to substantially alter the plans for the interior of the Grange and the landscaping, and the decision to jettison the plan for elevator access to all floors within the Grange, will cause harm to important historical and architectural elements of the Grange, thus degrading its status as a National Historic Landmark." Pl. Opp. at 16; Amended Complaint ¶ 80. Plaintiffs further claim that they "have a long-standing commitment to the Grange, have been involved in the community surrounding the Grange, have visited and utilized the Grange and will do so in the future when it is opened again for public use, and have a keen interest in historic preservation." Pl. Opp. at 27. Such conclusory allegations fail to articulate the nature of the alleged harm to the Grange, much less any injury sustained by plaintiffs, the cause of plaintiffs' injury, or how the Court's ruling might redress plaintiffs' grievances. See Gov. Br. at 15-29.

Moreover, plaintiffs failed to introduce any declarations or other evidence to supplement their conclusory allegations of standing. See Tasini v. New York Times Co. Inc., 184 F. Supp. 2d 350 (S.D.N.Y. 2002) (finding that plaintiff "cannot establish standing simply by resting on conclusory allegations in the complaint. Instead, he must make some affirmative factual showing that he is entitled to have the court hear his case."). In stark contrast, the Government submitted admissible evidence regarding the nature of the changes to 1995 GMP/EIS addressing the landscaping of the Grange, interior use of the Grange and elevator access within the Grange, public consultation on these issues, and how these changes further preserve the historic integrity of the Grange, see Declaration of Stephen Spaulding, dated October 21, 2008 ("Spaulding Decl."). In addition, the Government submitted an explanation of the obstacles that arose since 1995 regarding the development of the Convent Avenue site and the ongoing public consultation

2

regarding these developments. See Declaration of Maria Burks, dated October 21, 2008, ¶¶ 4-17.

Plaintiffs' reliance on the argument that on a motion to dismiss for lack of standing, "both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party," see Warth, 422 U.S. at 501-502, Pl. Opp. at 2 n.1, is unavailing. Conclusory allegations are insufficient to establish standing, see FW/PBS, Inc., 493 U.S. at 231; Warth, 422 U.S. at 518, and the Court may look beyond the pleadings in evaluating whether the Court has subject matter jurisdiction over the Complaint. See, e.g., Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Kamen v. Am. Tele. & Telegraph Co., 791 F.2d 1006, 1011 (2d Cir. 1986); Eastern Paralyzed Veterans Ass'n, Inc. v. Lazarus-Burman Associates, 133 F.Supp.2d 203 (E.D.N.Y. 2001) ("[T]he Court is not confined to the four corners of the Complaint when" evaluating a motion to dismiss for lack of standing). In Warth, after noting that courts accept allegations in the complaint regarding standing as true, the Court explained that:

> [I]t is within the trial court's power to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed.

Warth, 422 U.S. at 501-02.

This Court twice advised plaintiffs about the need to establish standing prior to the filing of the amended complaint. Specifically, prior to the preliminary injunction hearing on plaintiffs' initial complaint, the Court stated: "I want to let counsel know that I think there may be a serious question as to whether or not the plaintiffs have standing in terms of Constitutional standing for claims under either the NHPA or the APA." See Declaration of Lawrence H. Fogelman

3

("Fogelman Decl."), dated December 19, 2008, Exh. 1 (Transcript of Proceedings, June 16, 2008 at 5:11-14). Moreover, after plaintiffs withdrew their motion for a preliminary injunction and stated their intent to file an amended complaint, the Court again advised plaintiffs of their need to establish standing:

> I will have, as do counsel, a separate obligation to make sure there is subject matter jurisdiction in this lawsuit and the complaint as presently configured raises a question in my mind as to whether the two named plaintiffs have standing, and let me just describe a little bit for counsel what I am referring to. And, of course, this may no longer be relevant for the amended complaint. It will depend on how it's pleaded and who the plaintiffs are and everything else at that time. But of course to have constitutional standing you need a concrete injury that is separate from an interest in simply having the government follow procedures set out in a statute. And that is described in Lee v. Board of Governors, 118 F.3d at 911. Moreover, simply because you have had a voice or role in administrative proceedings is not enough, by itself, to confer standing upon you to bring a claim and, again, that is set out in Lee. Beyond that, there has to be a claim made that identifies the relief sought and the injuries sustained by the plaintiff such that the plaintiff can point to a relationship establishing causation and that the complaint is something that can be properly redressed through court action and intervention. Again, this is described in the Lee case. Let me just refer to you two other cases, Fund For Animals v. Babbitt, 89 F.3d 128, and New York Coastal Partnership, 341 F.3d at 118. So I would have been inviting briefing on the standing issue with respect to these related issues under the standing doctrine if we had been proceeding on the initial complaint. Whether the amended complaint will suggest similar need for briefing, I don't know at this time.

Fogelman Decl. Exh. 2 (Transcript of Proceedings, July 10, 2008, at 6:15–7:19).

Because plaintiffs have not establish standing, this Court should dismiss the amended complaint.

## II.   LIVING NEAR THE GRANGE DOES NOT CONFER STANDING

Plaintiffs attempt to minimize their burden to establish standing by claiming that in a case alleging violations of a procedural statute, plaintiffs have standing by virtue of living "in the vicinity of a project or undertaking that must [but did not] comply with NHPA" Pl. Opp. at 25.

4

However, simply living near a project covered by the NHPA does not confer standing, notwithstanding the procedural nature of the NHPA's requirements. The Supreme Court has identified three elements necessary for "the irreducible constitutional minimum" of Article III standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).[1] A plaintiff must "suffer[] an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560 (internal citations and quotation marks omitted). Second, a plaintiff must allege, and ultimately prove, a causal connection by showing that the injury "is fairly traceable to the challenged action of the defendant." Lujan, 504 U.S. at 560; Baur v. Veneman, 352 F.3d 625, 632 (2d Cir. 2003). Finally, the requested relief must be likely to redress the injury. See Lujan, 504 U.S. at 561; Baur, 352 F.3d at 632.

Plaintiffs thus improperly seek to reduce the "irreducible constitutional minimum" necessary to establish standing to one element: proximity. This contention is not supported by plaintiffs' reliance on a footnote in Lujan stating that "one living adjacent to the site for proposed construction of a federally licensed dam has standing to challenge the licensing agency's failure to prepare an environmental impact statement, even though he cannot establish with any certainty that the statement will cause the license to be withheld or altered, and even though the dam will not be completed for many years." Lujan, 504 U.S. at 573 n.7; Pl. Opp. at 24. This example does not eliminate the requirement to demonstrate injury-in-fact, causation and redressibility, "the irreducible constitutional minimum" of standing. See Lujan, 504 U.S. at 560. Rather, the

---

[1] Plaintiffs incorrectly claim that the Government failed to "acknowledge controlling authority" in its moving brief. Pl. Opp. at 24. To the contrary, the Government cited Lujan, the Supreme Court case describing standing requirements, in its moving brief.

Court only stated that a plaintiff "who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressibility and immediacy." Lujan, 504 U.S. at 573 n.7. A plaintiff must still establish a concrete and particularized injury-in-fact, causation, and some ability of the Court to redress plaintiffs' grievance by, for example, requiring a procedural remedy even if the procedure might not ultimately redress plaintiffs' grievance. See, e.g., Sierra Club v. Glickman, 156 F.3d 606, 613 (5th Cir. 1998) ("[I]n a procedural rights case . . . the plaintiff is not held to the normal standards for redressibility and immediacy . . . This does not mean, however, that a procedural rights plaintiff has standing merely because of the government's failure to comply with the relevant procedural requirements.") (citing Lujan, 504 U.S. at 573).[2]

Even if plaintiffs are not obligated to show that an injury in fact is "immediate," they must still show that such injury is "concrete and particularized." Lujan, 504 U.S. at 560, 573 n.8.[3] "Immediacy" is only one of several requirements plaintiffs must generally establish in order to demonstrate an injury-in-fact. Accordingly, relaxing the requirement of "immediacy," such

---

[2] The cases relied on by plaintiff simply do not stand for the proposition that proximity alone is sufficient to confer standing. See, e.g., Lemon v. Geren, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (Pl. Opp. at 25) (finding standing for plaintiffs where failure to conduct NHPA review could subject historic property to a redevelopment plan that called for "more construction and commercial activity, including activity on historic grounds"); Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 28 (1st Cir. 2007) (Pl. Opp. at 25) (standing based on agency's failure to conduct NEPA and NHPA review for lease to construct Liquified Natural Gas terminal that posed potential danger to "the environment, the historic preservation of tribal land, and protected animal specifies in the area.").

[3] While plaintiffs claim that the normal requirements of standing should not apply to them in light of the alleged "procedural" issues raised in the case, see Pl. Opp. at 24, plaintiffs also claim that they are seeking to vindicate "substantive" rights, not merely procedural rights. See Pl. Opp. at 19 -20 (claiming that Section 110(f) of the NHPA imposes "substantive" and not procedural obligations).

6

that, in the example of the dam, the plaintiff could establish standing even though the "dam will not be completed for many years," id. at 573 n.7, does not excuse plaintiffs' failure in this case to demonstrate any concrete and particularized harm to the Grange, much less to plaintiffs themselves. See Gov. Br. at 18-29; see also Lee v. Board of Governors, 118 F.3d 905, 911 (2d Cir. 1997) (noting that the Supreme Court "expressly has disavowed the argument that a procedural deficiency can satisfy the concrete-injury requirement 'without any showing that the procedural violation endangers a concrete interest of the plaintiff (apart from his interest in having the procedure observed'") (quoting Lujan, 504 U.S. at 573 n.8); Sierra Club, 156 F.3d at 613 (in a procedural rights case, "plaintiff must show an injury that is both concrete and particular, as opposed to an undifferentiated interest in the proper application of the law"); Lujan, 504 U.S. at 573 n.8 (noting that the dissent could not "cite a single case where we actually found standing solely on the basis of a 'procedural right' unconnected to the plaintiff's own concrete harm.").

Nor can plaintiffs establish redressibility by simply claiming that the normal standards of redressibility do not apply in a procedural rights case. Here, the Government has submitted uncontradicted evidence that it satisfied any obligation to consult with the public; accordingly, no further procedures would "redress" any claimed harm. In Lujan, the Court relaxed the redressibility requirement by noting that the plaintiff did not have to "establish with any certainty that the [requirement of the preparation of environmental impact statement] will cause the license to be withheld or altered." Lujan, 504 U.S. at 573 n.7. By contrast, in this case, there has been public process undertaken pursuant to the NHPA to address the changes to the 1995 GMP/EIS regarding the landscaping, interior design of the Grange and the elimination of an elevator to

7

preserve the historic fabric of the Grange, see Spaulding Decl; Gov. Br. at 4-8. In addition, there has been ongoing public consultation to address the use of the Convent Avenue site. See Gov. Br. at 8-10; Burks Decl. ¶¶ 4-17. The goals of the NHPA requiring public consultation have thus been satisfied. See Business and Residents Alliance of East Harlem v. Jackson, 430 F.3d 584, 591 (2d Cir. 2005) (describing NHPA as requiring agency to stop, look and listen); National Mining Ass'n v. Fowler, 324 F.3d 752, 755 (D.C. Cir. 2003) (finding Section 106 of NHPA "imposes no substantive standards on agencies"). Unlike the example of a dam in Lujan, where no environmental review had been conducted, in this case plaintiffs' claims are not redressible through additional public consultation because the public consultation required by NHPA has occurred and, with respect to the Convent Avenue site, continues to occur. See Gov. Br. at 3-11, 15-29; Burks Decl. ¶¶ 4-17.[4] For all these reasons, plaintiffs lack standing and the amended complaint should be dismissed.

## III.   PLAINTIFFS' CLAIMS REGARDING THE CONVENT AVENUE SITE ARE NOT RIPE

NPS' evaluation of how to proceed with the Convent Avenue site is not ripe for review. There is no merit to plaintiffs' arguments that their claim is ripe because (1) the claim is of a "procedural nature," (2) NPS intended to move the Grange and develop the Convent Avenue site at the same time, or (3) the Convent Avenue site is "a blighted empty lot." Pl. Opp. at 27-28.

First, to the extent that plaintiffs assert that their claim is ripe because the relocation of

---

[4] Plaintiffs' reliance on Okinawa Dugong v. Gates, 543 F. Supp.2d 1082 (N.D. Ca. 2008) (Pl. Opp. at 26) is likewise misplaced. In contrast to NPS' consultation with the public regarding the orientation, landscaping, interior design of the Grange, and development of the Convent Avenue site, Okinawa involved a failure to conduct NHPA review altogether regarding whether constructing a military facility would adversely affect dugong living in the area. See id. at 1095.

8

Grange and the development of the Convent Avenue site did not happen simultaneously, plaintiffs' claim is both moot and barred by laches, because the Grange has already been moved from its Convent Avenue location to St. Nicholas Park. NPS held public meetings on December 21, 2006, attended by plaintiffs, where NPS discussed with the community that no building was planned for Convent Avenue at that time. See Burks Decl. ¶ 13. NPS discussed the status of the Convent Avenue site and the obstacles to developing the site at meetings throughout 2007 and 2008. See id. ¶¶ 14-15. Plaintiffs nevertheless failed to file a lawsuit or seek any injunctive relief until June 2008, after the Grange had been removed from its permanent foundation on Convent Avenue and placed in the middle of the street on a temporary foundation pending its move. Plaintiffs did not seek injunctive relief regarding the Convent Avenue site until amending the complaint on August 8, 2008. Compare Complaint, p. 31 with Amended Complaint, p. 26 ¶ 3. Plaintiffs' claim is thus barred by mootness and laches. See Mount Graham Coalition v. McGee, 52 Fed. Appx. 354, 355 (9th Cir. 2002) (finding NHPA claim moot where "the harm that the [plaintiffs] seek to prevent has already occurred and no effective relief for the alleged NHPA violation can be given"); Committee to Save Fox Bldg. v. Birmingham Branch of Fed. Reserve Bank, 497 F. Supp. 504, 511-13 (N.D. Ala. 1980) (barring NHPA claim based on laches).

Moreover, plaintiffs' allegation that NPS "abandon[ed] altogether (or postpon[ed] indefinitely) the building of a" community center on the Convent Avenue site, see Amended Complaint ¶ 3, is not ripe because NPS has pursued, and is pursuing through an amendment to the GMP/EIS, public consultation to determine how to address the Convent Avenue site in a manner consist with NPS policy and priorities that have changed since 1995. See Burks Decl. ¶¶ 7-17; Coliseum Square Ass'n, Inc. v. Jackson, 465 F.3d 215, 245 (5th Cir. 2006) (affirming

determination that claims were not ripe because agency had reopened NEPA and NHPA review processes); Business and Residents Alliance, 430 F.3d at 591 (Section 106 of NHPA is a "stop, look, and listen" provision ensuring that agency will "consider the potential impact of that undertaking on surrounding historical places.").[5]

## CONCLUSION

For the reasons stated above and in the Government's moving brief, plaintiffs' amended complaint should be dismissed.

Dated:  New York, New York
        December 19, 2008

Respectfully submitted,

LEV L. DASSIN
Acting United States Attorney for the
Southern District of New York
Attorney for the Government

By: _____
LAWRENCE H. FOGELMAN
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel: (212) 637-2719
Fax: (212) 637-2730

---

[5] Even were the Court to find this matter ripe for adjudication, the Government disputes plaintiffs' contention that NHPA affords them a private right of action. See Pl. Opp. at 15 n.2 (citing cases). Although the Second Circuit has not addressed the question, the Government submits that the more persuasive authority holds that there is no private right of action under the NHPA. See San Carlos Apache Tribe v. United States, 417 F.3d 1091, 1096 (9th Cir. 2005); Karst Envtl. Educ. and Prot., Inc. v. EPA, 475 F.3d 1291, 1295 (D.C. Cir. 2007). Moreover, to the extent that these authorities suggest that a plaintiff may proceed under the Administrative Procedure Act ("APA"), here there has been no final agency action regarding the disposition of the Convent Avenue site that would warrant APA review. See 5 U.S.C. § 704; Seafarers Int'l Union of North America, AFL-CIO v. U.S. Coast Guard, 736 F.2d 19, 26 (2d Cir. 1984) (agency action not final until "the process of administrative decision-making has reached a stage where judicial review will not be disruptive of the agency process.").